UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| CONTINENTAL REFINING COMPANY, LLC, | ) ) ) | |
| Plaintiff, | ) ) | No. 6:17-CV-74-REW-EBA |
| v. | ) ) | |
| THE HARTFORD STEAM BOILER INSPECTION AND INSURANCE COMPANY, | ) ) ) ) | OPINION AND ORDER |
| Defendant. | ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

> Extremes in nature equal ends produce;
> In man they join to some mysterious use.

Alexander Pope, An Essay on Man, The Poetical Works of Alexander Pope 79 (H.F. Cary, ed., 1841).

Pope's aphorism sets an apt stage for this case, involving extremes of the natural world—a ~600° hydrocarbon mixture (naphtha) pulsing through a large piping structure at over 14,000 pounds per hour, ultimately producing a violent explosion and fireball—and two companies (an oil refiner and an insurer) fighting about EBC policy language with similar vigor. In the end, there is much "myster[y]" here, for the case ends not with a bang—as did the October evening at issue—but with a whimper—a lone discovery admission ensures exclusion and disposes of the case.

I.  BACKGROUND

During the night of October 11, 2015, part of the F-2001 Charge Heater at Continental Refining Company, LLC's (Continental) crude oil refinery in Somerset,

1

Kentucky, ruptured. *See* DE ##30 (Conventional Filing) (video of the intense, fiery incident); 1-1, at ¶ 8 (describing damaged equipment as "an F-2001 Rupture Tube and refractory"); 5, at ¶ 7 (describing ruptured equipment as "a single tube . . . in the Alcorn Combustion charge heater"); 28-3 (Gibson Depo.), at 9 (Depo. p. 34) (describing the F-2001 charge heater); 28-9 (QEI Report), at 3-4 (same); *id.* at 19, 21 (Pictures); 28-6, at 4, 15, 17, 19, 21. Basically, the heater prepared a naphtha stream for additional refining by sending the high-volume and high-pressure stream through a snaking series of pipes within a box-shaped furnace. One of the pipe segments burst. The parties differ over how to describe the precise sequence; suffice it to say the heater refractory suffered significant damage.

Continental subsequently sought recovery for certain damages under its Hartford Steam Boiler Inspection and Insurance Company (HSB) insurance policy for Equipment Breakdown Coverage (EBC). HSB substantially denied coverage; this suit followed. The parties have litigated the case, and HSB now seeks summary judgment. DE #28 (Motion). Continental opposed. DE #33 (Response). HSB replied. DE #35 (Reply). With Court permission, DE #40, Continental surreplied. DE #41 (Surreply).[1] The matter is ripe for consideration.

## II. STANDARD

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter

---

[1] Permitting the surreply vitiated Continental's contention that HSB denied it an opportunity to respond to relevant arguments and evidence. *See Key v. Shelby Cnty.*, 551 F. App'x 262, 265 (6th Cir. 2014); *Eng'g & Mfg. Servs., LLC v. Ashton*, 387 F. App'x 575, 583 (6th Cir. 2010). HSB had put the admission-based theory at issue from *the very first page* of its summary judgment motion, *see* DE #28, at 1 n.2, even if the RFA itself did not emerge until the reply.

of law." Fed. R. Civ. P. 56(a). A reviewing court must construe the evidence and draw all reasonable inferences from the underlying facts in favor of the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 106 S. Ct. 1348, 1356 (1986); *Lindsay v. Yates*, 578 F.3d 407, 414 (6th Cir. 2009). Additionally, the court may not "weigh the evidence and determine the truth of the matter" at the summary judgment stage. *Anderson v. Liberty Lobby, Inc.*, 106 S. Ct. 2505, 2511 (1986).

The burden of establishing the absence of a genuine dispute of material fact initially rests with the moving party. *Celotex Corp. v. Catrett*, 106 S. Ct. 2548, 2553 (1986) (requiring the moving party to set forth "the basis for its motion, and identify[] those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate an absence of a genuine issue of material fact"); *Lindsay*, 578 F.3d at 414 ("The party moving for summary judgment bears the initial burden of showing that there is no material issue in dispute."). If the moving party meets its burden, the burden then shifts to the nonmoving party to produce "specific facts" showing a "genuine issue" for trial. *Celotex Corp.*, 106. S. Ct. at 2253; *Bass v. Robinson*, 167 F.3d 1041, 1044 (6th Cir. 1999). However, "Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 106 S. Ct. at 2552; *see also id.* at 2557 (Brennan, J., dissenting) ("If the burden of persuasion at trial would be on the *non-moving* party, the party moving for summary judgment may satisfy Rule 56's burden of production in either of two ways. First, the moving party may submit affirmative evidence that negates an essential element of the nonmoving party's claim.

Second, the moving party may demonstrate to the Court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim." (emphasis in original)).

A fact is "material" if the underlying substantive law identifies the fact as critical. *Anderson*, 106 S. Ct. at 2510. Thus, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* A "genuine" issue exists if "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.* at 2511; *Matsushita Elec.*, 106 S. Ct. at 1356 ("Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'") (citation omitted). Such evidence must be suitable for admission into evidence at trial. *Salt Lick Bancorp v. FDIC*, 187 F. App'x 428, 444-45 (6th Cir. 2006).

### III. ANALYSIS

Under Policy No. FBP2344824, HSB "provide[d] insurance," called "Equipment Breakdown Coverage," to Continental "for a Covered Cause of Loss," which the policy defined to mean an "accident." DE #1-1, at 19. The agreement defined "accident," in turn, as "a fortuitous event that causes direct physical damage to 'covered equipment.'" *Id.* (Section A.1). Specifically, "the event must be one of" a series of things. *Id.* (Section A.1.a). The Court avoids burdening this Opinion with additional detail here because HSB "does not dispute that an 'accident' occurred[.]" DE #28, at 19 (citing Section A.1.a.6); *see also* DE #4 (Answer), at ¶ 10.

HSB, instead, hangs its hat on the policy exclusions. Specifically, the contract excluded from coverage "loss, damage or expense caused directly or indirectly by" a series of things, "whether or not caused by or resulting from an 'accident,'" including, as relevant here, "fire, including smoke from a fire;" "combustion explosion," a term that "includes, but is not limited to, a combustion explosion of any steam boiler or other fired vessel;" and "any other explosion, except as specifically provided in A.1.a.(3)." DE #1-1, at 22 (Section B.1.a). Section A.1.a.3, in turn, defines "accident" to mean "[e]xplosion, other than combustion explosion, of steam boilers, steam piping, steam engines or steam turbines." *Id.* at 19.

"The sole issue in this case," Plaintiff tells the Court, "is whether Defendant breached its obligations under the Policy by denying coverage for Plaintiff's claim." DE #33, at 2. HSB seeks summary judgment in its favor, while Continental argues that the policy "does not preclude coverage," and, at "the very least, . . . can be reasonably interpreted as allowing for coverage and thus must be construed in favor of Plaintiff, the insured." *Id.* at 10.

"[T]he proper interpretation of insurance contracts generally is a matter of law to be decided by a court[.]" *Thiele v. Ky. Growers Ins. Co.*, 522 S.W.3d 198, 199 (Ky. 2017).[2] The analysis "begins with the text of the policy itself." *Pryor v. Colony Ins.*, 414 S.W.3d 424, 430 (Ky. Ct. App. 2013). The Kentucky Supreme Court has "consistently held that the words employed in insurance policies, if clear and unambiguous, should be given their plain and ordinary meaning." *Thiele*, 522 S.W.3d at 200 (internal quotation

---

[2] The parties agree that substantive Kentucky law applies in this diversity case; the Court, accordingly, undertakes no independent choice-of-law analysis. *Gahafer v. Ford Motor Co.*, 328 F.3d 859, 861 (6th Cir. 2003).

5

marks and alteration removed). "Where the terms of an insurance policy are clear and unambiguous, the policy will be enforced as written." *Kemper Nat'l Ins. Cos. v. Heaven Hill Distilleries, Inc.*, 82 S.W.3d 869, 873 (Ky. 2002). The Court "must give effect to what the parties expressly agreed upon[.]" *Nationwide Mut. Ins. Co. v. Nolan*, 10 S.W.3d 129, 131 (Ky. 1999).

However, "when interpreting insurance policies, the contract should be liberally construed and any doubts as to coverage should be resolved in favor of the insured." *MGA Ins. Co., Inc. v. Glass*, 131 S.W.3d 775, 778 (Ky. Ct. App. 2004) (internal quotation marks and alteration removed). "Where an exclusion is susceptible to two reasonable interpretations, the interpretation favorable to the insured is adopted." *St. Paul Fire & Marine Ins. Co. v. Powell-Walton-Milward, Inc.*, 870 S.W.2d 223, 226 (Ky. 1994). But, a "liberal interpretation is not synonymous with a strained one." *K.M.R. v. Foremost Ins. Grp.*, 171 S.W.3d 751, 753 (Ky. Ct. App. 2005). "The rule of strict construction against an insurance company," thus, "does not mean that every doubt must be resolved against it and does not interfere with the rule that the policy must receive a reasonable interpretation consistent with the parties' object and intent or narrowly expressed in the plain meaning and/or language of the contract." *St. Paul Fire*, 870 S.W.2d at 226. Indeed—importantly—the parties' intent "is to be deduced, if possible, from the language of the contract alone." *Nolan*, 10 S.W.3d at 131-32; *K.M.R.*, 171 S.W.3d at 753 (same); *Ky. Unemployment Ins. Comm'n v. Wilson*, 528 S.W.3d 336, 340 (Ky. 2017) (same principle).[3]

---

[3] The general elements of breach of contract in Kentucky are: "1) existence of a contract; 2) breach of that contract; and 3) damages flowing from the breach of contract." *Metro Louisville/Jefferson Cnty. Gov't v. Abma*, 326 S.W.3d 1, 8 (Ky. Ct. App. 2009).

6

Exclusions "do not grant coverage; rather, they subtract from it." *Kemper Nat'l Ins. Cos.*, 82 S.W.3d at 872; *see also id.* at 871 (describing the "function" of "exclusions" to be "to restrict and shape the coverage otherwise afforded" in the policy). "Because coverage exclusions are contrary to the fundamental protective purpose of insurance, they are strictly construed against the insurer and will not be extended beyond their clear and unequivocal meaning. But that strict construction should not overcome plain, clear language resulting in a strained or forced construction." *Id.* at 873-74 (internal quotation marks removed). "[A] clearly worded exclusion is not treated as ambiguous," and "[t]ortured constructions of clauses in an attempt to create an aura of ambiguity are unavailing to create coverage." *Holzknecht v. Ky. Farm Bureau Mut. Ins. Co.*, 320 S.W.3d 115, 121-22 (Ky. Ct. App. 2010); *see also, e.g.*, *Transamerica Ins. Co. v. Duro Bag Mfg. Co.*, 50 F.3d 370, 372-73 (6th Cir. 1995); *Am. Nat'l Bank & Trust Co. v. Hartford Accident & Indem. Co.*, 442 F.2d 995, 999-1000 (6th Cir. 1971); *Owners Ins. Co. v. Frontier Housing, Inc.*, 291 F. Supp. 3d 810, 815 (E.D. Ky. 2017).

The parties agree (at least for Rule 56 purposes) on several aspects of this case. HSB neither contests that an "accident" occurred, nor the "covered equipment" element. *See, e.g.*, DE ##28, at 19; 28-29, at 3. Continental agrees that an "explosion" happened. DE #1-1, at ¶ 8. Additionally, the parties do not dispute, for purposes of summary judgment, that the rupture at issue was "a type of mechanical explosion called a BLEVE [boiling liquid expanding vapor explosion], which, according to QEI, [Continental's expert,] was followed within a few seconds by a fire." DE #35, at 2. HSB focuses its legal fire, via the Section B exclusion provisions, on the "steam boilers, steam piping,

steam engines or steam turbines" language of Section A.1.a.3. *See* DE ##28, at 1 n.2, 17, 19; 35, at 2-6.

Through an interlocking combination of provisions, the only "explosions" the HSB policy does not exclude are non-combustion explosions of "steam boilers, steam piping, steam engines or steam turbines." In reaching this conclusion, the Court begins, as it must, with the policy text and holds that the relevant provisions are clear and unambiguous. *See Kemper Nat'l Ins. Cos.*, 82 S.W.3d at 873-74. Section B.1.a quite clearly excludes coverage for ("We will not pay for") loss, damage, or expense caused by "[c]ombustion explosion" and "[a]ny other explosion, except as specifically provided in A.1.a.(3)." DE #1-1, at 22. Again, the exclusions apply "whether or not" an "accident" caused the involved "loss, damage or expense." *Id.*[4]

Section A.1.a.3, in turn, explicitly limits the definition of "accident" to an "[e]xplosion, other than combustion explosion, of steam boilers, steam piping, steam engines or steam turbines." *Id.* at 19. Grammatically, the "other than combustion

---

[4] Section B begins with an anti-concurrent causation clause. *See* DE #1-1, at 22 ("We will not pay for any excluded loss, damage or expense, even though any other cause or event contributes concurrently or in any sequence to the loss, damage or expense."). Such clauses are generally enforceable. *See, e.g.*, *Front Row Theatre, Inc. v. Am. Mfr.'s Mut. Ins. Cos.*, 18 F.3d 1343, 1347 (6th Cir. 1994); *Preferred Mut. Ins. Co. v. Travelers Cos.*, 127 F.3d 136, 138 (1st Cir. 1997); *Hendy v. Md. Cas. Co.*, No. 2015-CA-1030-MR, 2016 WL 3962599, at *3 (Ky. Ct. App. July 22, 2016); *cf. Iroquois on the Beach, Inc. v. Gen. Star Indem. Co.*, 550 F.3d 585, 587-89 (6th Cir. 2008). The cases Continental cites in response explicitly note that Kentucky "did not officially adopt the [concurrent proximate cause] doctrine[.]" *See Johnson v. Capitol Specialty Ins. Corp.*, Nos. 2017-CA-171-MR, 2017-CA-172-MR, 2018 WL 3090503, at *6-7 (Ky. Ct. App. June 22, 2018). Regardless, Plaintiff cites no case proof suggesting that a non-excluded "peril [wa]s the efficient and dominant cause" of damage. *Id.* at *7. The parties do not fully develop this argument, but the key, to the Court, would be evaluating Plaintiff's theory in light of the clause, which purports to resolve by contract (rather than the default law) the causation measurement. The briefing does not do that, and the Court does not rule premised on the anti-concurrent causation clause.

explosion" appositive-like limiting phrase, set apart from the chief accident-defining word "[e]xplosion," bounds the reach of the word "[e]xplosion." The "other than" phrase, sequestered and bookended by commas, modifies the word preceding it. Thus, A.1.a.3 could be fairly rewritten as, "Non-combustion explosion of steam boilers, steam piping, steam engines or steam turbines." *See, e.g.*, DE #33, at 15 (Continental agreeing that the Policy covers only "*some* non-combustion explosions" (emphasis added)).[5]

As relevant to this case, and on this record, there is no ambiguity in these provisions. Accordingly, the Court "give[s] effect to what the parties expressly agreed upon," *Nolan*, 10 S.W.3d at 131, and deduces the parties' intent "from the language of the contract alone." *Id.* at 131-32; *see also* DE #33, at 15 (Continental urging the Court to effectuate "the terms and language of the Policy"). The Court agrees with Continental on that front and (or perhaps but) enforces the contract "as written." *Kemper Nat'l Ins. Cos.*, 82 S.W.3d at 873-74 (holding the exclusion at issue was "unambiguous" because it "clearly defines the coverage").

Even if the Court examined the broader record on the issue of intent (though it need not do so),[6] the evidence conclusively supports HSB. Demetrios Haseotes,

---

[5] An alternative reading (although Continental does not advocate for this—indeed, on the cited page, it reads the provision as does the Court) simply is a grammatical non-starter. If the parties had intended the provision to cover, for instance, *all* explosions other than combustion explosions of steam boilers, steam piping, steam engines or steam turbines, they would have omitted the comma following "combustion explosion." Such a reading would also result in internal contract inconsistencies; for example, the policy would cover *some* combustion explosions in A.1.a.3, but exclude *all* combustion explosions in B.1.a.2. The parties surely did not intend such a self-defeating absurdity. Continental confirmed as much in the briefing, and HSB certainly views (in the briefing) and viewed the policy that way. *See* DE #33-2, at 94 (Depo. p. 93) ("Well, I mean, the only type of explosion we cover is a steam explosion."). This solidifies, to the Court, the provision's clarity.

[6] "Under the doctrine of reasonable expectations," which Continental repeatedly invokes, "an insured is entitled to all the coverage he may reasonably expect to be provided

Continental's President and CEO, testified that he did not view the HSB policy as covering "fires" or "explosions"—instead, only simple "equipment failures." DE #28-1, at 28 (Depo. p. 108). Steve Morris, Continental's CFO, agreed. DE #28-2, at 15 (Depo. pp. 57-58). Continental, though heavy on argument, cites no case proof indicating that it, in fact, intended the opposite of its own top brass, a deficient strategy to contest a Rule 56 motion. *See Anderson*, 106 S. Ct. at 2514 ("[T]he plaintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment."); *Lewis v. Philip Morris Inc.*, 355 F.3d 515, 533 (6th Cir. 2004) (same principle); *Wimbush v. Wyeth*, 619 F.3d 632, 638 n.4 (6th Cir. 2010) ("Buchanan suggests that the fact that the evidence was in the record somewhere is sufficient to create a question of fact and survive summary judgment. This is simply incorrect. Even if the evidence to which Buchanan now refers was sufficient to rebut Wyeth's evidence of adequate warning, it was Buchanan's job to point to the evidence with specificity and particularity in the relevant brief rather than just dropping a pile of paper on the district judge's desk and expecting him to sort it out."). Simply put, the Court need not, outside the scope of party advocacy, "search the entire record to establish that it is bereft of a genuine dispute of material fact"; judges, after all, "are not like pigs, hunting for truffles that might be buried

---

*according to the terms of the policy." Ky Ass'n of Counties All Lines Fund Trust v. McClendon*, 157 S.W.3d 626, 634 (Ky. 2005) (internal quotation marks removed; emphasis in original); *see also, e.g., Acuity, A Mut. Ins. Co. v. Servs. Constr., LLC*, No. 5:15-CV-107-REW, 2017 WL 2543307, at *5-7 (E.D. Ky. June 12, 2017) (thoroughly explaining the contours of Kentucky's doctrine of reasonable expectations). The exclusion here, as the Court discusses throughout this Opinion, was "unequivocally conspicuous, plain and clear." *McClendon*, 157 S.W.3d at 634. Even if "Kentucky law envisions that the particulars of a given situation could inject ambiguity into terms nominally clear," *Acuity*, 2017 WL 2543307, at *7, Continental establishes, in the Court's opinion, no reasonable expectation of coverage, in light of the record and the contract language it actually agreed to buy.

in the record." *Emerson v. Novartis Pharm. Corp.*, 446 F. App'x 733, 736 (6th Cir. 2011) (internal quotation marks removed).

Indeed, the record indicates that Continental's leadership knew within days of the event that HSB did not intend to "cover any of the damage from the fire or the explosion." DE ##28-14, at 2; 28-16, at 1 (10/22/15 Haseotes email stating that Continental "understood Hartford's coverage position" that there would not be "coverage for a fire or explosion"); 28-22, at 1-3 ("[W]e advised Continental of the potential applicability of this exclusion [the fire and explosion exclusion] early on during the HSB on-site inspection."); 33-2, at 63 (Depo. p. 62) ("So I'm showing them that we don't cover fire, smoke, explosion."). Continental's contemporaneous response to this, apparently, was to profess ignorance of the policy provisions. *See* DE ##28-14, at 2 ("Kris [Gibson] explained that . . . had they known" of the policy exclusions "they would have placed more emphasis on the fire policy."); 33-2, at 64-65 (Depo. pp. 63-64) ("I think they were a little surprised . . . that we had no involvement in the fire."). If Continental was blind to the exclusions in the applicable policy, it certainly did not intend (could not have intended) them *not* to apply and had (could have had) no *reasonable* expectation regarding their applicability.

What matters, at bottom, is that Continental admitted in this litigation "that the F-2001 Charge Heater is not a steam boiler, steam piping, steam engine or steam turbine." DE #37-1, at 4 (Answer to Request No. 10). That factual matter is, thus, "conclusively established." Fed. R. Civ. P. 36(b). Continental has filed no 36(b) "motion," and the Court has not otherwise permitted "the admission to be withdrawn or amended." *Id.*; *see also, e.g.*, *Goodson v. Brennan*, 688 F. App'x 372, 375 (6th Cir. 2017). The admission is

"therefore an unassailable statement of fact" that is "binding" on (*i.e.*, not disputable by other evidence by) the admitter. *Sec'y U.S. Dep't of Labor v. Kwasny*, 853 F.3d 87, 91 (3d Cir. 2017); *see also Jelsma v. Knox Cnty., Tenn.*, 725 F. App'x 396, 397 (6th Cir. 2018) (holding that a party cannot rely on an affidavit to contradict a Rule 36 admission in order to survive summary judgment); Advisory Committee Note to 1970 Amendment to Rule 36 (likening a Rule 36 admission "to an admission in pleadings or a stipulation" and contrasting Rule language giving "an admission a conclusively binding effect" with prior language that some courts interpreted as making an admission "rebuttable" like other testimony).[7]

Further, even if the Court *considered* permitting admission withdrawal, HSB would face, per the specific briefing content and case schedule sequence, prejudice "caused by a sudden need to obtain evidence," precluding withdrawal. *Kerry Steel, Inc. v. Paragon Indus., Inc.*, 106 F.3d 147, 154 (6th Cir. 1997); Fed. R. Civ. P. 36(b) (permitting withdrawal only if, *inter alia*, "the court is not persuaded that [withdrawal] would prejudice the requesting party in maintaining or defending the action on the merits"); Advisory Committee Note to 1970 Amendment to Rule 36 ("Unless the party securing an admission can depend on its binding effect, he cannot safely avoid the expense of preparing to prove the very matters on which he has secured the admission, and the

---

[7] Continental's sole argument against consideration of the Rule 36 admission is that the request "did not reference the Policy in any respect." DE #41, at 4. This is unpersuasive. This case is all about application of the policy, and HSB copied policy language word-for-word in the request for admission. Indeed, earlier requests in the same document *did* explicitly note the policy at issue. *See* DE #37-1, at 1-2 (Requests Nos. 1 & 2). The Court fails to see how the specific request not explicitly referencing the policy makes any difference, and Continental cites no authority for the contention. This further underscores that (as discussed in more detail later in this Opinion) Continental admitted a *fact* (as opposed to, *e.g.*, a legal position on the meaning of a contract term).

purpose of the rule is defeated."). HSB explicitly told the Court that "until receiving Continental's response [to the summary judgment motion], given the reality of the charge heater along with Continental's admission and the 30(b)(6) testimony, HSB had no clue that there was any issue in anyone's mind that the F-2001 Charge Heather was *not* a steam boiler, steam piping, steam engine, steam turbine, or any other type of steam vessel." DE #35, at 3 n.2 (emphasis in original). Permitting withdrawal here would run counter to the text, and defeat the purpose, of Rule 36. Again, Continental has filed no relevant motion and contests none of this specific analysis.

The full record, although (again) the Court need not consider it, further one-sidedly supports the substance of Continental's admission. *See, e.g.*, DE #28-1 (Haseotes Depo.), at 31 (Depo. p. 122) (Q: "And F2001 is not a steam vessel,[8] is that true?" A: "It's not. That is true."); *id.* at 44 (Depo. pp. 174-75) (Haseotes describing the "hydrogen-enriched naphtha . . . liquid" flowing in the "tube" that "ruptured"); *id.* at 45-46 (Depo. pp. 180-81) (contemplating a "liquid explo[sion]" and that "liquid entered the furnace box" after "the tube ruptured"); 33-2, at 94 (Depo. p. 93) ("Their equipment is not any of those type of items."); 34-1, at 3 ("The subject charge heater . . . was not a steam vessel.").[9] Expert Mariscalco's affidavit does not alter the result; he simply discussed

---

[8] HSB explained that the parties had used "steam vessel" as "shorthand for the actual policy provision" before HSB "had any idea that Continental would dispute its previous admission[.]" DE #35, at 7; *see also* DE #28, at 1 n.2 (using this shorthand pre-dispute). The admission at issue, again, uses the precise policy phrasing.

[9] The QEI report purported to "determine whether: a) the tube burst event first caused an explosion that damaged the heater refractory, and subsequently resulted in a fire, or b) the tube burst event resulted in a fire and explosion, which subsequently damaged the heater refractory." DE #33-1, at 4. Those are separate matters from whether (even if there was gas or vapor involved) the F-2001 Charge Heater is a steam boiler, steam piping, steam engine or steam turbine—a factual question QEI did not address. The report does not even include the word "steam," save for in two mentions of Defendant's name. Again,

BLEVEs in both the steam boiler and charge heater context. *See* DE #33-3, at ¶¶ 4-7; *cf.* DE #33-2 (Smith Depo.), at 55 (Depo. p. 54) (contrasting the F-2001 with a boiler: "I've never been inside one of these heaters. . . . Boilers, yes. Heaters, no."). Mariscalco did not say BLEVEs happen exclusively in steam boilers; in fact, he explicitly differentiated between "Steam boiler BLEVEs and Charge Heater BLEVEs," DE #33-3, at ¶¶ 5-7, thus recognizing that steam boilers and charge heaters (such as the F-2001) are distinct pieces of equipment.

In this context, the Court accepts the event version depicted by Continental expert Mariscalco. He, a PE, unequivocally attributes the losses at issue to a BLEVE, a "boiling liquid expanding vapor explosion." DE #28-9, at 5-6. In particular, "It can thus be reasonably concluded that the pipe burst incident resulted in a BLEVE-type, high energy mechanical explosion . . . and that explosion damaged both the F-2001 sidewall refractory and stacked floor brickwork." *Id.* at 8. Inarguably, Mariscalco attributes the harm to the explosion—"The damage to the refractory walls and floor was caused by the pipe burst mechanical explosion, and subsequent high pressure impact forces." *Id.* at 11 ¶ 6. The pipe rupture began the short chain of events, but the BLEVE, per the expert, followed the rupture and directly caused the damages claimed.

The Policy excludes all explosions, except for non-combustion explosions of "steam boilers, steam piping, steam engines or steam turbines." The exclusion language is clear and stresses: "We [HSB] will not pay for loss . . . caused directly or indirectly by any of the following, whether or not caused by or resulting from an 'accident.'" DE #1-1, at 22 § B.1. Thus, if an excluded explosion directly or indirectly caused the loss, HSB has

---

though, the Court emphasizes that Continental's Rule 36 admission, not the other proof in the record, alone is conclusive and dispositive of the issue.

no obligation to pay for such loss, even if the explosion was one "caused by or resulting from" the pipe section bursting. That is just the causal sequence Mariscalco depicts. DE #28-9, at 11 ¶ 4 ("The explosion caused by the pipe burst incident created pressures and forces sufficient to damage [the property at issue.]"). The actual manner in which the loss occurred means that the loss from the explosion is outside the risk of the policy.

Return to the policy language. Again, it plainly excludes coverage not only for "[c]ombustion explosion," but also for "any other explosion, except as provided in A.1.a.(3)." DE #1-1, at 22 (Section B.1.a.3). Because, as Plaintiff admitted, the F-2001 Charge Heater is not a steam boiler, steam piping, steam engine or steam turbine, it, perforce, does *not* fall within A.1.a.3's reach (regardless of any other case issue). This means, applying the contract, that B.1.a.3's "except" phrase is inapplicable and that this event *does* fall within B.1.a.3's catch-all explosion exclusion. Indeed, to that point, Haseotes—Continental's chief voice—could not explain the company's theory, and had no opinion, "as to why the policy's fire, smoke or explosion exclusions don't apply here." DE #28-1, at 32 (Depo. p. 126). "[A]ny applicable exclusion is sufficient to remove coverage," and the B.1.a.3 exclusion, coupled with the other Section B language, "clearly defines the coverage" here. *Kemper Nat'l Ins. Cos.*, 82 S.W.3d at 874. "Consequently, the literal language of the exclusion must apply to preclude coverage in this case." *Holzknecht*, 320 S.W.3d at 120. The exclusion was "plainly and unequivocally presented in the four corners of the policy," and the Court accordingly enforces it. *Phil. Indem. Ins. Co., Inc. v. Tryon*, 502 S.W.3d 585, 593 (Ky. 2016) (finding an exclusion "unambiguous" when "the text" was "quite clear" concerning what the parties "intend[ed] to exclude [from] coverage").

In the briefing, Continental offers several rejoinders, but none has merit. First, Plaintiff cites no authority for the lack-of-expert-proof argument. *See* DE #33, at 13. The question whether the F-2001 is a "steam boiler, steam piping, steam engine or steam turbine" is factual, and Continental's admission is dispositive. The Court sees no need for expert proof on the plain meaning issue.[10] A like reaction meets Plaintiff's disingenuous contention that it (now) "<u>disputes</u>" whether the charge heater is a steam boiler, steam piping, steam engine or steam turbine. *Id.* at 13-14 (emphasis in original). Continental, again, cites no case proof in support of its purported dispute, ignores its own Rule 36 admission, and provides no reason to doubt Haseotes's deposition statement (or the other relevant proof). *See, e.g.*, *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 584 (6th Cir. 1992) ("It is now quite well-established that, in order to withstand a motion for summary judgment, the party opposing the motion must present 'affirmative evidence' to support [its] position[.]"). Further, given Continental's decisive admission and the other evidence, the Court sees no need to entertain a lexicon canvass over the word "steam."

Plaintiff also cites no authority for its abbreviated "wavier and estoppel" argument, *see* DE #33, at 12, and the Court sees no merit to the theory. HSB consistently warned Continental that all exclusions were potentially in play and that it expressly did not waive any potential defense. *See, e.g.*, DE ##28-6, at 26-27; 28-13, at 1; 28-17, at 1-2 ("You are respectfully advised that neither this correspondence nor any conduct related to this matter shall be construed as a waiver of, nor shall [HSB] be estopped from asserting

---

[10] *See also* DE #1-1 (Policy) at 32 § G.2 (providing definition for "Boilers and Vessels"). Continental's expert commonsensically equates steam with water. *See* DE #33-3 ¶ 6 (noting higher damage potential from "steam boiler BLEVE" relative to "Charge Heater BLEVE[] due to the greater energy release of high temperature, *high pressure water* in a steam boiler explosion" (emphasis added)).

in the future, any rights or defenses it may have under any applicable policy of insurance, regulation, or law. We are expressly reserving all such rights and defenses."); 28-20, at 1-6 (citing and reprinting the entirety of B.1.a and stating, *e.g.*, "Some policy exclusions will apply" and (again) that "HSB specifically reserves all of its rights under the Policy, and no waiver or estoppel of any kind is intended nor should be inferred."); 28-22, at 3 (same language); 28-26, at 2 (same); 28-29, at 8-11 (again reprinting the entirety of B.1.a and repeating the same reservation / non-waiver language).

Case law harmoniously supports HSB's position. *See, e.g.*, *W. Ky. Mach. Shop, Inc. v. Valiant Ins. Co.*, No. 2004-CA-679-MR, 2005 WL 1415548, at *2 (Ky. Ct. App. June 17, 2005) (holding that insurance company "was not estopped from asserting [a] policy exclusion" and "did not waive its policy exclusion"); *Reed v. Netherlands Ins. Co.*, 860 F. Supp. 2d 407, 419 (E.D. Mich. 2012) (explaining that case law "does not support Plaintiffs' position" that because an insurance company "failed to raise certain exclusions as a defense in [its] initial denial letter," it "therefore should be estopped from asserting [them] now" and should be "estopped from asserting new defenses"); *Bensalem Tp. v. W. World Ins. Co.*, 609 F. Supp. 1343, 1346-47 (E.D. Pa. 1985) (same—holding an insurance company was not limited to denying "coverage only on those grounds specifically raised by [its initial] letter" and not "estopped from invoking [a] provision" not mentioned in the initial letter as a defense in the case).

Two concluding points. *Structural Processing Corp. v. Hartford Steam Boiler Inspection & Insurance Co.*, 885 N.Y.S.2d 713, No. 2008-971NC, 2009 WL 995790 (Sup. Ct. App. Term Apr. 7, 2009) (table), which Continental cites, DE #33, at 15-16, is inapposite (in addition to being unpublished and nonbinding). There, the "cause of the

17

loss at issue ha[d] not been established with certainty," and there was a dispute whether a "backfire" counted as an "explosion" under a policy exclusion, leading the court to conclude that summary judgment was inappropriate. *Id.* at *3. Those are not the circumstances here, where judgment results from the particular analysis above. Finally, *Welders Supply, Inc. v. American Employers' Insurance Co.*, 342 F.2d 972 (6th Cir. 1965), which Continental cited in a letter to HSB, DE #28-21, at 4, involved materially different exclusion language and a "vigorous factual controversy" over whether "the initial explosion occurred inside insured machinery," *see* 342 F.2d at 973-74, rendering the case distinct and of little aid to Plaintiff. The Court agrees with HSB that "those cases are readily distinguishable from this claim." DE #28-22, at 2.

Accordingly, per this analysis, there is no jury question concerning whether HSB breached, and Defendant is entitled to judgment. Continental complains of damages caused by a mechanical explosion; the EBC excludes coverage for such damages. Continental can have no recovery for the contested losses, and HSB is entitled to a judgment.

## IV. CONCLUSION

For these reasons, the Court **GRANTS** DE #28 and will enter a separate Judgment.

This the 4th day of October, 2018.

Signed By:
*Robert E. Wier* REW
United States District Judge

18